STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Appeals of | } |
| Middlebury College and | } Docket Nos. 124-7-99 Vtec, 228-11-99 Vtec |
| KW Middlebury, LLC | } and 103-5-00 Vtec |

Decision and Order on Motion for Judgment as a Matter of Law
and Motion to Dismiss Appeal

In Docket No. 124-7-99 Vtec, Appellant-Applicants Middlebury College and Robert Karol and Dan Wolf, d/b/a KW Middlebury, LLC, ("Applicants") appealed from all portions of the May 21, 1999 decision[1] of the Planning Commission of the Town of Middlebury ruling on their application, except the Traffic Impact Criterion analysis from which specifically no appeal was taken. Simultaneously, Applicants requested the Planning Commission to reconsider all portions of their application except the findings as to the Traffic Impact criterion. A group of interested parties entered their appearance but did not file a cross-appeal.

---

[1]The May 1999 decision was limited to the three criteria of town plan compliance, traffic, and downtown impact. That decision approved the PUD Master Plan with conditions; approved the hotel/conference and office/apartment uses with respect to traffic impact; denied the hotel/conference and office/apartment buildings and parking lot site plans on the basis that their scale and form do not conform with the Town Plan; and determined that insufficient evidence was presented to reach a conclusion regarding whether the hotel/conference and office uses will or will not have an undue adverse impact on the economic vitality of the downtown.

In Docket No. 228-11-99 Vtec, Applicants appealed from the November 5, 1999 decision[2] of the Planning Commission of the Town of Middlebury ruling on their application, except the Traffic Impact Criterion analysis from which specifically no appeal was taken, and except that Applicants' appeal of the portion of that decision approving a PUD Master Plan was restricted to "seeking a ruling that Middlebury College is not bound by such portion unless approval for Phase I of the master plan is granted as well." The November 1999 decision stated on its face that it "amends and replaces the Commission's May 21, 1999 decision." (Emphasis added). In Docket No. 124-7-99 Vtec, the group of interested parties filed a cross-appeal of the decision, and specifically raised the Traffic Impact criterion in its Statement of Questions.

---

[2] The November 1999 decision approved the PUD Master Plan with conditions and provided for future amendments to it; approved the lodging/conference and office/apartment uses with respect to traffic impact; denied the hotel/conference and office/apartment buildings and parking lot revised site plans on the basis that their scale and form do not conform with the Town Plan; and approved the hotel/conference and office/apartment uses with respect to lack of undue adverse impact on the economic vitality of the downtown.

In Docket No. 103-5-00 Vtec, Applicants appealed from the May 12, 2000 decision[3] of the Planning Commission of the Town of Middlebury ruling on their application, except the Downtown Impact Criterion analysis. The May 2000 decision again stated on its face that it "replaces the Commission's November 5, 1999 amended decision." (Emphasis added). In Docket No. 103-5-00 Vtec, the group of interested parties filed a cross-appeal of the decision, and specifically raised the Downtown Impact criterion in its Statement of Questions.

The three appeals were consolidated in this Court. Appellant-Applicants are represented by Jon Anderson, Esq. (except that in the event that the interests of the two Applicants should diverge, Middlebury College is represented by Austin Hart, Esq.); Cross-

---

[3] The May 2000 decision denied the PUD Master Plan because the disclaimer placed in the narrative by Middlebury College either rendered the application incomplete or in violation of §550(III) of the Zoning Ordinance (this disclaimer has since been modified to eliminate the problem); determined that the request for setback waiver could not be acted upon because the requirements of §550(III) of the Zoning Ordinance had not been sufficiently addressed; determined that the hotel/conference and office/apartment uses and the overall PUD had changed sufficiently that further information was needed to render a decision with respect to traffic impact; denied the hotel/conference and office/apartment buildings and parking lot revised site plans on the basis that their scale and form do not conform with the Town Plan, would have undue adverse effects upon aesthetics and the character of the area affected, and will not comply with §760 of the Zoning Ordinance with respect to parking; and again approved the hotel/conference and office/apartment uses with respect to lack of undue adverse impact on the economic vitality of the downtown.

Appellant-Interested Parties are represented by Gerald R. Tarrant, Esq.; and the Town is represented by Karl Neuse, Esq. At the close of the Appellant-Applicants' evidence, the Town moved orally for judgment as a matter of law. The Cross-Appellant-Interested Parties moved orally for judgment as a matter of law, but in their written memorandum they restated the motion as one to dismiss the application as substantially incomplete.

The property at issue in the application involves a 31-acre parcel of land owned by Middlebury College located generally between Middle Road and Creek Road and Court Street (U.S. Route 7), of which KW Middlebury proposes to purchase a 4.1-acre parcel fronting on Court Street/Route 7, including the former Maple Manor Motel. The overall project consists of a Planned Unit Development (PUD) consisting of a subdivision of two lots for commercial development on the parcel to be purchased by KW Middlebury and a mix of undefined uses and residential housing in the area to be retained by Middlebury College. KW Middlebury plans to build a motel on a portion of the 4.1-acre parcel, to deed to the Town[4] the entrance road onto the 4.1-acre parcel and to sell the remainder of the 4.1-acre parcel with an office-apartment building[5] to be constructed on it. KW Middlebury's proposal for the 4.1-acre parcel has been referred to generally as Phase I of the overall PUD project (but to avoid confusion with Phase I and Phase II of the hotel, we will avoid the term as much as possible).

The overall 31-acre project is defined as a Planned Unit Development. Under §550(II), the Planning Commission may require a subdivision or a multiple unit commercial complex to be submitted as a PUD, and has done so in the present instance.

Thus, the project must meet the criteria for conditional use approval in §540(C), and must meet the standards for PUD approval in §550(III).

---

[4] KW Middlebury has reserved its right to retain the entrance road as a private right of way.

[5] An earlier application had proposed the subdivision of the 4.1-acre parcel into two lots, one for the construction of a hotel/conference center and the other for the construction of a 5,000-square-foot restaurant. Before the May 1999 decision, Applicants withdrew their plans for the restaurant in favor of the office/apartment building.

4

Section 540(C)(7) allows the Planning Commission to grant "partial, preliminary, or conceptual" approval "for major projects or in unusual cases." That section applies both to conditional use approval, and, through §550(III)(f)(1), to PUD approval. Section 550(III)(f)(1) also notes that §530 requires preliminary layout plans and final PUD plans to be submitted to the Design Advisory Committee for recommendations to the Planning Commission. Under §550(III)(f)(2), a PUD which involves the subdivision of land, as does the present application, is also subject to the Subdivision Regulations, and that section directs the Planning Commission to conduct the subdivision review concurrently[6] with the PUD application to avoid duplicate proceedings. The availability of staged review of the project and the fact that it requires three separate approvals (PUD, conditional use, and subdivision) from a single body, seems to have imported a fair degree of confusion among the participants regarding exactly what level, stage and type of application is before the Court for decision.

In each of the three applications now before the Court, KW Middlebury has taken the lead, and seeks initial review under what the Planning Commission identified as certain "key criteria." In the May 1999 decision, the Planning Commission determined that the submitted plans were insufficiently specific for it to make findings on all the criteria. The Planning Commission has taken the approach, which the Court endorses, that to reduce the expense to all parties, it makes little sense to proceed with time-consuming and costly preparation of plans and hearings on other criteria, until a decision is made on the PUD master plan and the "key criteria."

These "key criteria" were refined over the course of the three proceedings before the Planning Commission. No other aspects of the project are before the Court in the present appeals. The "key criteria" relating to the applications before the Court are: conformance with the Town Plan (§540(C)(2)(h) and §550(III)(a) and (e)), including related issues of aesthetics (§540(C)(2)(e)) and character of the area affected (§540(C)(1)(b));

---

[6] In the present instance, no subdivision application appears yet to have been filed.

5

effect on traffic on roads or highways in the vicinity (referred to as "traffic impact") (§540(C)(1)(c)); impact on the economic vitality of the downtown (§540(C)(2)(g)); acceptance of the PUD master plan (§540(C)(1)(b)); and requests for waiver of compliance with certain otherwise-applicable bylaws  (§540(C)(1)(d)) as to front setback (§620) and joint use of parking  (§760(V)) for the 4.1-acre parcel.

Thus the application before the Court is partial in that it calls for a decision on whether to approve the project on only the "key criteria."  It is also preliminary in that the Planning Commission has not acted on any final plans, and the Court sits in the place of the Planning Commission in any appeal.   Indeed, the application must necessarily be for no more than preliminary approval, as no recommendation of the Design Advisory Committee has been presented to the Court regarding the design for which approval is sought.  We note that Applicants' discussion during oral argument on these motions, asserting that the application is for a type of final but conceptual approval may be illustrative of the lack of consensus among the parties as to exactly what the Court is being asked to approve.

KW Middlebury has been taking the lead in the presentation of the application to the Court in this de novo proceeding, and is primarily interested in determining whether it may proceed with those aspects of the project planned for the 4.1-acre parcel to be purchased by it.  KW Middlebury understandably wishes to minimize its expenditures to produce a master plan for the remainder of the property, as it does not intend to develop the remainder of the property; it has provided support for the master plan only as it has understood such support to be a necessary prerequisite to approval of the 4.1-acre parcel.

The fundamental problem with KW Middlebury's approach is that at no time in these proceedings have the parties been required to lay out their views of the necessary sequence of the partial and staged approval process.  As a consequence, evidence on even the limited key criteria has come before the Court, as it came before the Planning Commission, in the wrong sequence to allow those issues to be decided either effectively or efficiently.   KW Middlebury evidently views each of the key criteria as entirely independent of one another.  However, some of them are and others are not.  Moreover, KW Middlebury evidently expects the approval of the subdivision of this parcel at the

6

proposed line to create the 4.1-acre parcel, to be a purely incidental and ministerial task, which it is not.

Accordingly, we here lay out the Court's initial view of the necessary sequencing of the "key criteria" before it, solicit the parties responses in writing, and schedule an in-person conference to discuss the appropriate next steps in the pending appeals.

Before considering the appropriate sequence, we must add to the "key criteria" the question of approval of the subdivision. That application must be made and should have been considered by the Planning Commission together with the PUD and conditional use applications. §550(III)(f)(2). The subdivision application must be before the Court together with the PUD and conditional use application, because without it we do not have before us the size and the shape of the parcel available to KW Middlebury for its hotel/conference center and office/apartment building proposal.

Two of the key criteria, relating only to the KW Middlebury parcel, are independent of the shape and size of the parcel available to KW Middlebury; therefore they may be presented and ruled on in advance of the subdivision application. These criteria are the traffic impact and the impact on the economic vitality of the downtown of a hotel/conference center and office/apartment building of the proposed sizes, with access onto Route 7. Oddly, it appears that Applicants view these issues as raised only by the cross-appeals and therefore have postponed coming forward with their evidence in support of the project on these criteria. However, regardless of which party raises an issue in the appeal, because the appeal is de novo before the Court, Applicants still have the burden of presenting evidence in support of that criterion. At the present stage of the proceedings, the Court is unable to find from the evidence that Applicants have met either of these criteria, even though Applicants must have evidence to present. Accordingly, we will give Applicants the opportunity to determine if they wish to reopen their case in chief to present evidence on these criteria, or if they wish to wait until the other parties have presented their evidence, and risk being limited in the scope of their rebuttal evidence by the scope of the other parties' evidence on these topics. once these criteria are presented and decided, KW Middlebury should have an answer to its most preliminary question: can a hotel/conference center and an office/apartment building be built at all on the proposed site

7

fronting on Route 7, regardless of the question of whether the hotel/conference center can be designed as a single building.

The remaining criteria must be presented in a rational sequence, to avoid the morass of interdependent evidence in which these appeals find themselves, and to give KW Middlebury an answer to the next of its own sequence of questions: can it build a hotel/conference center designed in a single building. First in the necessary sequence of the "key criteria" before the court are the subdivision application and approval of the Master Plan for the full 31 acre parcel.

The subdivision application has not been made, much less ruled on. It is KW Middlebury which has defined the available parcel for its project as 4.1 acres in size, yet that particular division of the overall property may or may not be approved. Most importantly, the Master Plan for the entire 31-acre parcel has been submitted in too incomplete a form for the Court to determine if it can be approved on even a preliminary basis. Section 550(III)(e) requires that "the project shall be an efficient and unified treatment of the development possibilities of the site." With respect to the present project, the parties must all accept and be clear about the fact that "the site" means the overall 31-acre parcel, and not simply KW Middlebury's intended portion of it.

In particular, the location of the wetlands, large trees that should be preserved, and any other natural constraints on the overall parcel will determine where the roads may be placed, where filling can legally occur, and whether KW Middlebury will have available to it as much of the proposed 4.1-acre parcel for construction as it wishes to use. The phasing of buildout of the PUD roads and the economic analysis of that infrastructure, especially as it relates to the connector road, will determine when and whether KW Middlebury will have available to it a secondary route of access to its parcel. It is entirely possible that the Planning Commission could require the Applicants to construct some portion of that connector road prior in time to the construction of the projects on the proposed 4.1-acre parcel, especially if the Town pursues its plans to construct a divider in Route 7 which would prevent left turning northbound traffic from using the project's entrance road. Further, it is possible that the 4.1-acre parcel is too constrained by wetlands to allow the construction proposed for it, while a somewhat longer parcel might more easily qualify for

8

approval.  It is possible that the hotel now proposed as a single building on the its portion of the parcel is simply too large for its proposed site, while a somewhat longer parcel might allow a single-building hotel to be designed and approved with the overall appearance of a village street fronting on the entrance road.  It is possible that the entrance road could be divided on a larger parcel to create a narrow "village green" in the center of the parcel, thus doubling the amount of on-street parking available to the project.  None of the remaining issues relating to the design of the KW Middlebury portion of the project can properly be ruled on until the Master Plan is presented in a form that complies with §550(III)(e).  That is, at least preliminary approval of the Master Plan for the entire 31-acre parcel is a prerequisite to consideration of the layout and design of the buildings which KW Middlebury wants to build, and will determine the ultimate size and shape of that available parcel.

The next appropriate criterion in the sequence should be the project's conformance with the Town Plan, including related issues of aesthetics and character of the area affected.  All the evidence has been presented on that criterion, as it relates to the design of the buildings before the Court to date, but it is possible that the resolution of the subdivision application and master plan criteria will result in some differences in the proposed design.  Moreover, the proposed design must be reviewed by the Design Advisory Committee before it should have been before the Planning Commission and before it should be decided by this Court.  At this juncture the Court does not need to resolve whether the old or the new town plan applies; we merely note that although the newer town plan is more explicit, the issues presented by both plans are essentially equivalent.

The last of the "key criteria" presented in the appeals to date are KW Middlebury's requests for waiver of compliance with the front setback requirements, and its requests for joint use of parking  for the 4.1-acre parcel, should not be addressed until the size and shape and placement of the buildings and the entrance road is finally known.   In this respect, we note that if the entrance road is public, each of the two front lots is a  corner lot and may require a waiver for parking in front of the building line on the entrance road.

9

Accordingly, the Town's and the Cross Appellant-Interested Parties' motions for judgment at the close of the Applicant's case are granted in part. The Master Plan for the 31-acre parcel is inadequate to allow the Court to rule on whether it can be approved; a subdivision application must be filed and ruled on under §550(III)(f)(2); and the design of the KW Middlebury portion of the project must be submitted to the Design Advisory Committee prior to this Court's ruling on the adequacy of that design. Cross Appellant-Interested Parties' motion to dismiss the application is denied; we can proceed to consider the traffic impact and downtown impact criteria while the other applications are proceeding.

Any party wishing to comment upon this decision, including to request reconsideration of any part of it, shall file such requests by August 12, 2000; any responsive memoranda shall be filed so that they are received by the other parties on or before Monday, August 21, 2000, with a copy for the Court's use provided at the Addison Superior Court no later than 8:30 a.m. on Wednesday, August 23, 2000. The conference is scheduled for noon to 1 p.m. at the Addison Superior Court no later than 8:30 a.m. on Wednesday, August 23, 2000. Participants may bring their lunch and will be given the opportunity to eat during the conference. The attorneys are requested to invite such representatives of the parties as may be helpful in determining their preferences as to the next step; those representatives will be allowed to participate in the conference.

Done at Barre, Vermont, this 24th day of July, 2000.


_____
Merideth Wright
Environmental Judge